```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF OHIO
                    EASTERN DIVISION
```

Momentive Specialty Chemicals,  :
Inc.,

      Plaintiff,            :

  v.                              :   Case No. 2:13-cv-275

                                   :   JUDGE MICHAEL H. WATSON
Ricky Alexander,                    Magistrate Judge Kemp

      Defendant.           :

## ORDER

    This case is currently before the Court to decide plaintiff Momentive Specialty Chemicals, Inc.'s motion to compel production of Defendant Alexander's computer (Doc. 25).  The matter has been fully briefed and the parties have requested an expedited decision based on the fact that the case is (according to the parties) set for trial during the week of June 20, 2013.  This order constitutes the Court's ruling on the motion.

    Due to the expedited nature of the briefing and ruling, the Court will set forth only a brief background of the case and the motion.  The case itself involves Momentive's claim that defendant Ricky Alexander, who used to work for Momentive, has gone to work for a competitor, breached a non-compete agreement, and taken proprietary information with him to use in competing against Momentive.  It turns out that Mr. Alexander had either one or two flash drives he used while at Momentive and that one or both of them may have contained sensitive information such as customer lists.  Momentive wants to find out if Mr. Alexander accessed those flash drives (one of which, according to Mr. Alexander, he left in his office the day he left Momentive) since he has been working for his new employers.  As part of its investigation into this subject, Momentive asked Mr. Alexander if

he would allow an image to made of his current laptop computer and if Momentive could search it.

According to the parties, Mr. Alexander agreed to some type of forensic examination of that computer. They disagree, however, over the exact terms of that agreement. Their disagreement is evidenced by the competing protocols they proposed for the examination. A copy of each of those protocols is attached to Momentive's motion.

Under Momentive's approach, after an expert prepares an exact image of the computer's hard drive, Interhack Corporation will search the imaged drive for "information relevant to this case." That will be done through "conceptual keyword search and analysis" using certain search terms listed in Exhibit B to Momentive's proposed protocol. 49 search terms are listed. Once responsive documents are identified, they will be given to counsel for both parties simultaneously. All such documents will be designated as "confidential" under an existing protective order. If any communications between Mr. Alexander and his litigation attorneys are found, they will be given to his counsel for privilege review, which must be completed within three business days.

Mr. Alexander's proposed protocol is quite different. He envisions that the first task performed after the image is made will be to determine if either of the flash drives was ever connected to or accessed by his laptop. If not, the examination would be at an end. Otherwise, the examination would proceed, but would be limited to a search for documents which might have been on either of the flash drives. If that search occurs, the examiner would eliminate and not produce copies of any privileged documents. Anything left would be given to both counsel and marked "attorney eyes only" under the protective order.

Despite suggestions in Momentive's memoranda that this

matter can be resolved based on the parties' prior agreement, the Court does not find that basis sufficient.  The agreement is not in writing and the parties differ on its scope, with some of those differences being supported by sworn statements of counsel.  Without an evidentiary hearing, it would be difficult if not impossible to determine exactly what the parties agreed to.  However, the motion can be resolved without reference to any prior agreement, based upon the general principles applicable to discovery.  It can also be resolved without the need to take sides in the argument about whether Mr. Alexander has proved himself an untrustworthy witness or party, something which Momentive argues strenuously and which Mr. Alexander just as strenuously denies.

    The concept driving the parties' disagreement appears to be this: Momentive thinks it has asked Mr. Alexander to produce all relevant documents which are on his laptop's hard drive, and Mr. Alexander thinks Momentive has only asked to look at the hard drive in order to see if he accessed the flash drives in question after denying doing so.  He apparently does not deny that there are other relevant documents on his hard drive that could be asked for properly as part of discovery.  He also has not argued that the search terms proposed by Momentive would not be an appropriate way to search for relevant documents.  He just disagrees that locating and producing all relevant documents is the point of the hard drive imaging and searching process.

    As noted, whether searching for evidence of use of the flash drives was Momentive's original reason for asking for an image of the hard drive is hard to determine.  Given the situation the parties are now in, however, with trial looming, the need to take Mr. Alexander's deposition, and the need to complete the search of the hard drive before that occurs, there is nothing either unusual or improper in what Momentive is currently proposing,

which is to have Mr. Alexander produce all of the relevant documents in his possession.  And if Momentive had not made that specific request before, it clearly has done so in its proposed search protocol.  There can be no legitimate argument that Momentive is not entitled to copies of relevant documents wherever they may be found, including on the hard drive in question.  So both reasons advanced by Momentive for the imaging and search are appropriate and permissible, and timing concerns mandate that both be accomplished as quickly as possible.

　　　Although both types of searches fall well within the scope of allowable discovery, the protocols for each should not necessarily be the same.  The Court agrees that an imaging and forensic search is needed in order for Momentive to determine if Mr. Alexander's computer accessed the flash drives.  It would appear that Sections 5(a) through (h) of Momentive's protocol are specifically designed for this purpose, and that having Momentive's expert share this information only with Momentive is appropriate.  Also, if actual files from the flash drives are determined (in some way that is better left to experts) to be on the hard drive, those should be produced directly to Momentive (although copies should be provided to Mr. Alexander's counsel at the same time).  No privilege or relevance review of those documents would appear to be needed.

　　　Other relevant documents which were not taken from the two flash drives should be treated differently, however.  It would seem that there is no reason for their production to proceed differently from any other production of documents gathered from a key word search of ESI.  That is, Mr. Alexander is the one who would appear to have the initial responsibility of reviewing the documents which are "hit" by the search terms in order to weed out any privileged communications, for which he would create a privilege log.  It also makes some sense to permit him to review

the documents to eliminate any that are simply irrelevant and non-responsive to any legitimate discovery request (i.e. documents which are not relevant to any party's claims or defenses or which are not reasonably calculated to lead to the discovery of relevant evidence).  The remainder should then be produced and, if appropriate, designated with some level of protection as permitted by the existing protective order.

The question always comes up, however, about how much of that winnowing process to entrust to the party producing the documents rather than the party asking for them.  Momentive, claiming to be distrustful of Mr. Alexander, wants all of the documents "hit" by the search terms to be produced to its counsel regardless of whether they turn out to be discoverable.  At this stage of the case, the Court does not believe that is necessary, and it is a departure from the usual way in which documents are produced.  However, the Court will direct counsel for Mr. Alexander to log any documents withheld on relevance grounds so that the parties can have a reasoned discussion about whether that withholding was appropriate.  If disputes about that subject arise, the Court strongly recommends that copies of any documents in dispute be made available to Momentive's counsel with the understanding that only they may review them, and if a disagreement remains, the parties will seek the Court's guidance about whether the documents have to be formally produced or returned to Mr. Alexander.

This leaves only the question of timing.  The parties seem prepared to have the forensic work done promptly, so the Court need not intervene in that part of the process.  The Court hesitates to guess at the amount of time Mr. Alexander's counsel will need to complete a privilege and relevance review of the documents, because it will depend in large part on how many documents responsive to the search terms are retrieved.

Assuming, however, that because only a few months have gone by since Mr. Alexander left Momentive, the volume of documents will not be overwhelming, the Court sets a turnaround time of five business days from counsel's receipt of the documents.  That should permit all of this activity to take place in time for Mr. Alexander to be deposed before trial.

Based on the foregoing, the motion to compel (Doc. 25) is granted as outlined above.  The parties shall request an immediate conference with the Court should they encounter difficulties in implementing the Court's resolution of the issues raised by the motion.

<u>/s/ Terence P. Kemp</u>
United States Magistrate Judge