```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION
```

Momentive Specialty Chemicals, :
Inc.,

      Plaintiff,             :

    v.                          :       Case No. 2:13-cv-275

                                   :       JUDGE MICHAEL H. WATSON
Ricky Alexander,                       Magistrate Judge Kemp

      Defendant.           :

## ORDER

     This case is currently before the Court to decide defendant Ricky Alexander's motion to compel discovery (Doc. 13). The matter has been fully briefed. This order constitutes the Court's ruling on the motion.

### I. Background

     In another discovery order filed on May 16, 2013 (Doc. 10), the Court set forth a brief background of this case. The case involves Momentive's claim that defendant Ricky Alexander, who used to work for Momentive, has gone to work for a competitor, breached a non-compete agreement, and taken proprietary information with him to use in competing against Momentive. According to the complaint, Mr. Alexander worked for Momentive in the area of selling "proppants," which "are injected into deep, underground wells to create a pathway for gas and oil." Complaint, Doc. 2, ¶6. One of the disputes which has arisen is whether Momentive is in the business of selling raw sand as a proppant. Mr. Alexander appears to contend that, at least while he was at Momentive, the only sand Momentive sold as a proppant was resin-coated sand (it also sold ceramic proppants), and that Momentive should not be able to prevent him from working for a company which serves the same market but sells raw sand rather

than coated sand.  He suggests that any company selling raw sand is not a competitor of Momentive's and that the non-compete agreement he signed did not prevent him from working for such a company.

In order to flesh out this defense, Mr. Alexander served written discovery requests which asked for various documents and other information pertaining to Momentive's sale of raw sand. Momentive responded to those requests by producing some of the information, but it redacted some of the documents it produced and designated others as "attorneys eyes only."  Mr. Alexander asks the Court to order Momentive to provide him with additional information about its raw sand sales, to redesignate the documents which it marked at "attorneys eyes only," and to produce unredacted versions of many documents.  For the following reasons, the Court will grant the motion in part.

## II. Discussion

There are two main themes running through Momentive's response to the motion to compel: that some of the information requested by Mr. Alexander is too competitively sensitive to justify allowing anyone but outside counsel to see it, and that other information he has asked for is simply irrelevant.  The Court will organize its discussion around these two themes.

### A. Relevance

The information which Momentive believes to be irrelevant includes (1) certain items redacted from its 2013 Business Plans; (2) its 2012 Business Plans; (3) the identities of both its sales people who sell raw sand and its raw sand suppliers; (4) the sales price it charges for raw sand and to whom it has made such sales; and (5) information about it inventory capacity at the Longview, Texas transload facility.  The Court will address each of these categories of information in turn.

First, Momentive has represented that none of the

information redacted from the 2013 Business Plans deals with raw sand.  Mr. Alexander does not actually dispute this, but asks the Court to conduct an *in camera* review of an unredacted version of the documents to confirm that representation.  In the absence of any reason to suspect that Momentive is withholding relevant information from the Plans, the Court declines to order an *in camera* review.

Turning to the second issue, Momentive's argument about the 2012 Business Plans is somewhat different.  It appears to admit that the 2012 Plans address sales of raw sand.  However, it contends that the 2012 Plans are now out of date and were out of date when Mr. Alexander left Momentive in January, 2013, and that it has already produced evidence of its raw sand sales from November, 2011 forward.  It asserts that the Plans would add nothing to that information.

Assuming that raw sand sales are either relevant or, at a minimum, discoverable because information about such sales may lead to the discovery of relevant evidence about one of Mr. Alexander's defenses (see Fed.R.Civ.P. 26(b)), the fact that Momentive has produced other information about its 2012 raw sand sales does not make information in that year's Business Plans any less relevant.  Further, Momentive, as the party resisting production of relevant evidence on grounds that it is duplicative of other information produced, has the burden of showing that the discovery of the 2012 Plans would not just be cumulative or duplicative, but unreasonably so, see Rule 26(b)(2)(C), and it has not met that burden because it has not shown that the information in the Plans and in the invoices would completely overlap.  Cf. Alexander v. F.B.I., 194 F.R.D. 299, 302 (D.D.C. 2000).  Finally, any burden in producing the 2012 Plans would appear to be minimal.  The Plans should therefore be produced, although, as with the 2013 Plans, information that does not deal

with raw sand sales may be redacted.

As to the third issue, relating to the identity of Momentive's sand suppliers and the names of its sand salespersons, Momentive makes a similar argument.  Although it phrases its argument in relevancy terms ("The identification of salesmen who sold raw sand for Momentive is, quite simply, irrelevant" and "the source of raw sand, and the supply contracts for raw sand, are wholly irrelevant")(Memorandum in Opposition, Doc. 22, at 6), it supports those assertions not with any argument about relevance, but by repeating its claim that it has already produced both Business Plans and invoices showing that it has been selling raw sand since 2011.  Mr. Alexander does not necessarily dispute the fact that Momentive has sold some quantity of raw sand, but he argues that it did not do so in the same way as the company he worked for, and that its sales may have been of contaminated sand and may have been to suppliers rather than to end users of the product.  Certainly, knowing who made the sand sales in question may allow Mr. Alexander to explore these issues further, and the issues do relate to his defense.

The same cannot be said for information about Momentive's suppliers, however.  Whether, and to whom, Momentive sold raw sand may be pertinent to Mr. Alexander's theory that Momentive is not really in the raw sand business, but where it got its sand from strikes the Court as immaterial.  Mr. Alexander's reply memorandum says only that he needs to know this information "to see if the raw sand sales are the result of supply contract obligations...."  (Reply Memorandum, Doc. 26, at 7).  He does not explain how, if Momentive's purchases of sand were tied to some supply contract obligation, that might show that Momentive is not really a raw sand seller.  The Court agrees with Momentive on this point and will not order the production of supplier

information.

Next, as to sales price and customer information, all of which was redacted from the raw sand sales invoices which Momentive produced, Mr. Alexander argues that both these pieces of information "will show whether or not Momentive sold any raw sand in the East Texas region" and if the sales were made to end-user type customers, as opposed to buyers of contaminated sand who would re-sift the sand and then sell it to the same type of customer Mr. Alexander is accused of servicing in violation of the non-compete agreement.  Those appear to be relevant considerations, especially in light of Mr. Alexander's claim that the former type of sand sale occurred while he was at Momentive.

Momentive's also argues that this information, even if relevant, is highly confidential if, in fact, its customers and Mr. Alexander's employer's customers fall into the same category of sand buyers.  However, there is a protective order in place, and such information can be designated as attorneys eyes only in order to reduce or eliminate the risk of unfair competition.  The Court views this information as relevant and will order Momentive to produce unredacted copies of its invoices, subject to its ability to mark them as attorneys eyes only if it believes that to be necessary and appropriate.

The last category of information which Momentive claims to be irrelevant is the configuration or capacity of its Longview, Texas "transload facility."  As Mr. Alexander explains it, he worked at that site and it is the site which serves the East Texas region.  He believes that Momentive does not have sufficient space to store any appreciable amount of raw sand at that location, and that simple economics dictate that if it has to bring the sand in from elsewhere, it cannot sell it competitively in East Texas.  Consequently, he argues that this information, if it confirms his understanding of the situation at

Longview, would undercut Momentive's claim that it is selling raw sand to customers in East Texas for use as an oil and gas well proppant.

Momentive makes only a brief argument in opposition. It states, in conclusory fashion, that "this information has no bearing on the issue of violation of the non-compete clause" and that "Momentive's economic issues are not relevant in this case." They are, however, if they are reasonably related to the issue of whether Momentive is really in the raw sand business in a way that competes with Mr. Alexander's employer, and Mr. Alexander has presented a logical explanation about why this information may shed light on that issue. Given the current record, the Court finds his argument more compelling, and it will direct Momentive to produce this information.

B. Designations under the Protective Order

The only documents that Mr. Alexander seeks to have redesignated (from attorneys eyes only to confidential) are the 2013 Business Plans. His sole basis for making this request is that he "is the only person in his case who can interpret these documents...." (Motion to Compel, Doc. 13, at 8). He also points out that he has already seen these Plans in their entirety, so that Momentive will not be harmed if he sees them again.

In response, Momentive argues that Mr. Alexander's statement is simply not true. It says that the information about raw sand in these plans is straightforward and that anyone can understand it. Further, it expresses great reluctance to re-acquaint Mr. Alexander with the content of its business plans, which it regards as very competitively sensitive, now that he has gone to work for a competitor.

Having not seen the Plans, the Court is at somewhat of a disadvantage in choosing between the parties' claims about the

nature of the information about raw sand sales which is in the Plans.  However, that type of information does not, on its face, seem to be overly technical, and counsel have not submitted any evidence that they are unable to interpret it.  Further, it is typical that business plans containing competitively sensitive information be restricted, at least in the first instance, to attorneys and not be shared with parties who work for or might share information with the producing party's competitors.  See, e.g. Layne Christensen Co. v. Purolite Co., 271 F.R.D. 240, 246 (D. Kan. 2010)(attorneys eyes only designation "is usually reserved for more sensitive information, such as trade secret information, future product plans, competitive pricing, customer lists, or competitive business financial information").  If such information is outdated, it may be deserving of lesser protection, see JTS Choice Enterprises, Inc. v. E.I. Du Pont De Nemours and Co., 2013 WL 791438 (D. Colo. March 4, 2013), but that is clearly not the case with the 2013 Plans.  Further, counsel may depose Momentive representatives on these Plans to gain a better understanding of them, and they will be getting the 2012 Plan as well.  Unless, after all of this occurs, counsel can make a good faith showing that they need Mr. Alexander in order to understand the information in the 2013 Plans, the designation which Momentive has made should remain intact.

### III.  Order

For the reasons set forth above, Mr. Alexander's motion to compel discovery (Doc. 13) is granted in part and denied in part.  Given the fast track on which this case currently resides, the information which Momentive is being ordered to produce shall be produced within seven days of the date of this order.

### IV.  Procedure on Motion for Reconsideration

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for

reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5.  The motion must specifically designate the order or part in question and the basis for any objection.  Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter.  The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.3.

/s/ Terence P. Kemp
United States Magistrate Judge